UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

MARY ANN A.[1],                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )     CIVIL NO. 2:21cv151
                                   )
KILOLO  KIJAKAZI, Acting           )
Commissioner of Social Security,   )
                                   )
          Defendant.               )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for a period of

disability and Disability Insurance Benefits (DIB) under the Social Security Act, 42 U.S.C. §

423(d). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the

[Commissioner] shall file a certified copy of the transcript of the record including the evidence

upon which the findings and decision complained of are based.  The court shall have the power

to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the [Commissioner], with or without remanding the case for a

rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by

substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of no less than 12

months. . . ."  42 U.S.C. §416( i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.      The claimant last met the insured status requirements of the Social Security Act on March 31, 2017.

2.      The claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 15, 2015 through her date last insured of March 31, 2017 (20 CFR 404.1571 *et seq.*).

3.      Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy (20 CFR 404.1520(c)).

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1420(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) as the claimant was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk for six hours in an eight hour workday, except: the claimant needed to be provided with the option to stand for 10 minutes while remaining at the workstation after sitting for one hour, could walk for no more than 15 minutes at a time, was unable to climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl, could frequently operate hand and foot controls with the bilateral upper and lower extremities and needed to avoid all exposure to hazards such as unprotected heights or operating a motor vehicle and concentrated exposure to extreme cold and vibration.  In addition, the claimant would be off task for 10% of an eight-hour workday due to pain, not including normal breaks.

6.      Through the date last insured, the claimant was capable of performing past relevant work as a truck dispatcher.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.      The claimant was not under a disability, as defined in the Social Security Act, at any time from November 15, 2015, the alleged onset date, through March 31, 2017, the date last insured (20 CFR 404.1520(f)).

(Tr. 415-422).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

3

Plaintiff filed her opening brief on January 12, 2022.  On March 1, 2022, the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on March 24, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 4 was the determinative inquiry.

Plaintiff filed her application for DIB on February 29, 2016, alleging disability beginning November 15, 2015. (Tr. 82, 72). On February 9, 2018, after a hearing, ALJ Michelle Whetsel, issued an unfavorable decision. (Tr. 9-22). Plaintiff requested review by the Appeals Council, which was denied October 15, 2018. (Tr. 1-8). Plaintiff appealed that decision to this Court on December 11, 2018. (Tr. 501-13). On February 19, 2020, Magistrate Judge Susan Collins issued a

4

report and recommendation that the case be remanded. (Tr. 516-32). On March 10, 2020, Judge

Van Bokkelen adopted that report and recommendation and remanded the case. (Tr. 514-15). On

July 6, 2020, the Appeals Council remanded the case for a new hearing, pursuant to this Court's

Order. (Tr. 534-37). Plaintiff attended a phone hearing on October 22, 2020. On December 10,

2020, the ALJ Charles J. Thorbjornsen issued an unfavorable recommended decision. (Tr.

423-40). Then, on January 6, 2021, he issued an amended unfavorable decision. (Tr. 410-22).

Plaintiff then filed this action, pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 404.984.

     As of Plaintiff's alleged onset date, November 15, 2015, she was being treated at

Lakeshore Bone and Joint Institute by anesthesiologist and pain specialist Dr. Anita Rao, and

nurse practitioner Susan Fazekas. Plaintiff reported low back pain radiating to her right leg. (Tr.

275-76, 279, 287, 293, 300, 320, 324, 390, 396, 400, 407). She had numbness and tingling in her

legs and feet. (Tr. 293, 324, 407).  She had weakness (Tr. 293, 407) and muscle spasms (Tr. 407).

She was hypersensitive to touch, heat, and cold. (*Id.*) Pain made it difficult to walk. (Tr. 293,

407.) She had trouble sleeping and woke up during the night from pain. (Tr. 275, 279, 287, 293,

300, 320, 324, 390, 396, 400, 407).  She had insomnia. (Tr. 400.) Pain was sometimes worse in

the morning (Tr. 390, 396, 400), and as the day progressed. (Tr. 275, 279, 287, 300, 320, 324,

390, 396, 400).  Being sedentary for a length of time (Tr. 390, 396, 400), and activity (Tr. 275,

279, 287, 300, 320, 324, 390, 396, 400), aggravated her pain. Pain was relieved by rest and

medication. (Tr. 275, 279, 287, 300, 320, 324, 390, 396, 400). Pain interfered with her activities.

(Tr. 275-76, 279, 287, 293, 300, 320, 324, 390, 396, 400, 407). During examinations, she had

tenderness to palpation of her lumbosacral paraspinal muscles (Tr. 294, 408) and lumbosacral

junction. (Tr. 408). She had lumbosacral hyperextension with axial loading. (Tr. 277, 281, 289,

302, 322, 326, 392, 398, 402). Her lumbar spine had reduced range of motion, due to pain. (Tr. 294, 408.) Reflexes were reduced in her right knee (1+). (Tr. 392, 398, 402).

On January 18, 2016, an MRI of her lumbar spine demonstrated: fusion at L2-3; advanced degenerative disc disease at L3-4 with facet arthrosis; severe right subarticular recess and foramen stenosis; likely positional impingement of the exiting right L3 nerve root; significant left lateral recess and subarticular recess stenosis at L1-2; and significant bilateral subarticular recess and foraminal stenosis at L4-5. (Tr. 283-84). She was diagnosed with: low back pain;  lumbar degenerative disc disease; lumbar radiculopathy; and intervertebral disc disorder with lumbar stenosis and radiculopathy. (Tr. 277, 282, 290, 296, 303, 322, 326, 392, 398, 403, 409). She was prescribed numerous medications, including: Nucynta; Gabapentin/Neurontin; Mobic; Norco; Ropinirole; and Ambien. Her medications provided some pain relief, but sometimes were not effective and her pain increased. (Tr. 275, 278-79, 282, 287, 290, 293, 300-301, 303, 320-27, 390, 392, 396-97, 399-401, 403, 407).  Prior epidurals, lumbar medial branch block, and facet injections did not offer lasting relief. (Tr. 276, 293, 296). She underwent a right L3-4 transforaminal epidural steroid injection on February 11, 2016. (Tr. 291.) In March 2016 she reported that the injection provided 50 percent relief, reducing the burning sensation in her right thigh, but her back pain persisted. (Tr. 300, 320). In August 2016, she reported the injection had provided 75 percent pain relief for about 6 months. (Tr. 407). She had pain in her left leg. (*Id*.) On August 17, 2016, she underwent a left L4-5 transforaminal epidural steroid injection. (Tr. 404-06). In September 2016, she reported that her left leg symptoms resolved, but her back pain persisted. (Tr. 400). She reported the same in January 2017. (Tr. 390). Treatment notes indicate physical therapy was ineffective, long term. (Tr. 407). She was prescribed and used a lumbar

6

brace. (Tr. 287).

On April 4, 2016, Plaintiff underwent an internal medicine consultative examination with Dr. J. Smejkal. She had severe pain in her lower lumbar spine radiating to her right leg. Pain caused difficulty with daily activities. (Tr. 315.) She also had numbness in her legs and feet, causing difficulty walking or standing any length of time. (*Id*.) She attempted physical therapy and injections, but had continued pain. (*Id*.) During examination she had spinous and paraspinous tenderness in her lumbar area with limited range of motion. (Tr. 316). She had 60 degrees forward flexion and 15 degrees extension and right and left lateral flexion in her lumbar spine. (Tr. 318). Straight leg raise tests were positive bilaterally. (Tr. 316). She had an antalgic gait and was unable to walk heel-to-toe and tandemly. (Tr. 317). She was not able to stoop or squat. (*Id*.) She had difficulty standing, from seated. (*Id*.) She wore a prescribed back brace. (*Id*.) Dynamometer testing showed the ability to generate 18.5 kilograms of force with her right hand and 11.3 kilograms with her left hand, well below average normal grip strength for a female. (*Id*.)

Beginning in February 2017, Plaintiff began treatment at Midwest Interventional Spine Specialists. On February 28, 2017, she reported her back pain began about 18 months following her March 2012 back surgery. Her pain worsened and started radiating into her groin, right leg, and knee, with numbness and tingling in her right foot. (Tr. 382, 385). Back pain was constant but worse at times. (Tr. 381-82). Pain was worse with sitting, standing, lifting, bending, and driving, all after 15-to-30 minutes. (Tr. 382). Her pain was relieved by sitting with pillows or laying on the floor with her legs propped up. (*Id*.) About 75 percent of her pain was in her back and 25 percent of her pain was in her legs. (Tr. 383). Pain interfered with her sleep and she was fatigued. (Tr. 382, 384).

7

Plaintiff had treated with a primary care doctor, a spine surgeon, pain management, and a chiropractor. (Tr. 383). She had tried Norco and Tramadol. (Tr. 388). She was taking Nucynta, Meloxicam, Ropinirole, and Gabapentin. (Tr. 387). She had some relief with Gabapentin. (*Id*.) She had tried physical therapy in February and March 2014, which did not provide long term relief. (Tr. 388). Epidural steroid injections had not helped. (*Id*.) Her back brace helped. (*Id*.)

During March 2017 (the month her date last insured expired), she saw Dr. Gupta three times. She reported pain in her lower and mid-back, groin, and right leg, to her knee, and both feet and numbness and tingling in her right leg to her foot. (Tr. 373, 379). Pain was exacerbated by sitting, standing, lifting, and bending, and relieved by stretching. (*Id*.) Her daily function was severely limited and she was only able to accomplish basic activities. (Tr. 376). During examinations, she had tenderness to palpation over L5-S1, midline. (Tr. 374, 379). She had limited range of motion in her lumbar spine, including 80 degrees flexion, due to pain. (*Id*.) Straight leg raise tests were positive bilaterally. (Tr. 374, 379). Deep tendon reflexes were reduced in both ankles (1+). (*Id*.) Patrick's sign was positive on the right. (Tr. 374). Dr. Gupta diagnosed lumbar stenosis, lumbar degenerative disc disease, lumbar radiculopathy, and sacroiliitis. (Tr. 374, 380). On March 8, 2017, Plaintiff had transforaminal epidural steroid injections on the right at L4 and L5. (Tr. 377). On March 22, 2017, her right leg pain had resolved but she still had right low back pain radiating into her right groin. (Tr. 373). Dr. Gupta prescribed Lyrica and Nucynta. (Tr. 373-74, 379).

Plaintiff continued to see Dr. Gupta, and nurse practitioner Kathryn Trojan throughout 2017 (after her date last insured expired). She continuously reported pain in her lower back, radiating into her right leg, to her knee, and into her feet. (Tr. 336, 343, 347, 352, 359, 364, 369).

She had tingling and numbness extending to her right foot. (Tr. 336, 343, 346-47, 352, 359, 364, 369). Pain was exacerbated by sitting, standing, lifting, and bending and relieved by stretching. (Tr. 336, 343, 347, 352, 359, 364, 369). Her daily function was severely limited and she was only able to accomplish basic activities. (Tr. 339, 346, 350, 355, 362, 367, 372). During examinations, she had an antalgic gait. (Tr. 337, 344, 348, 353). She had tenderness to palpation over her lower facet joints (Tr. 370) and midline at L3-4, L4-5, and L5-S1. (Tr. 337, 344, 348, 353). Lumbar range of motion was limited to 60-to-70 degrees flexion and five-to-ten degrees extension. (Tr. 337, 344, 348, 353, 360). Hyperextension and rotation to the right and left caused axial pain. (Tr. 365, 370). She had hypersensitivity to light touch, midline, at L3-4 and L4-5, and left L4-5 and L5-S1 joints. (Tr. 360). She had decreased sensation in the feet. (Tr. 337, 344, 348, 353). She had reduced deep tendon reflexes in her lower extremities. (Tr. 337, 344, 348, 353, 360, 365, 370). She had positive straight leg raise tests bilaterally. (Tr. 337, 344, 348, 353). She had pain in her sacroiliac joints during straight leg raise tests. (Tr. 365, 370). She had positive Patrick's sign bilaterally. (Tr. 360, 365, 370). Fortin finger tests were positive. (Tr. 360, 365, 370). She had positive Stork's sign on the right. (Tr. 360). Sacroiliac joint distraction test was positive. (Tr. 365, 370). She had decreased strength with left knee extension (4/5). (Tr. 337, 344, 348, 353). She had muscle atrophy in her bilateral p/s muscles. (Tr. 344, 348, 353, 360). On September 5, 2017, she had an EMG which revealed bilateral L5 radiculopathy. (Tr. 335). Plaintiff was diagnosed with lumbar degenerative disc disease (Tr. 365, 370); lumbar and lumbosacral arthropathy (Tr. 370); lumbar spinal stenosis (Tr. 344, 348, 353, 365, 370); bilateral lumbar radiculitis (Tr. 341); lumbar radiculopathy (Tr. 337, 344, 348, 353); history of lumbar fusion (Tr. 337, 344, 348, 353, 360, 365, 370); post-laminectomy syndrome (Tr. 341); and sacroiliitis. (Tr. 360, 365, 370). She

9

was prescribed Nucynta and Lyrica. She reported varying relief from medication: 0-25 percent relief; 25-50 percent relief; and no help. (Tr. 365). In April 2017, she underwent a transforaminal epidural steroid injection which improved radicular pain. (Tr. 353, 360). In July 2017, she had a left medial block at L3, L4, and L5 dorsal ramus for the facet joints of L4-5 and L5-S1. (Tr. 357). In October 2017, she had transforaminal epidural steroid injections at L5 bilaterally. (Tr. 341.) She reported increased pain. (Tr. 339). Overall, she had between 0 and 25 percent relief from injections. (Tr. 339, 346, 350, 355).

Plaintiff continued to suffer from low back pain into her hips and legs in May 2018 and she had a trial spinal cord stimulator implanted. (Tr. 744, 896). That provided 50 percent relief from pain in her hips and legs. (Tr. 744). On October 17, 2018, she had a permanent spinal cord stimulator implanted. (Tr. 671-72). However, thereafter she still reported ongoing pain, despite some improvement. (Tr. 743, 782, 788, 794, 860, 883-84). Doctors diagnosed failed back surgical syndrome. (Tr. 783, 794, 865, 884).

On May 12, 2016, non-examining state agency doctor, Dr. S. Small, opined Plaintiff could lift/carry 20 pounds occasionally, ten pounds frequently, stand/walk six hours, and sit six hours, in an eight-hour workday. (Tr. 77). She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. (Tr. 78, 81). On August 2, 2016, another non-examining state doctor, Dr. M. Brill, agreed with Dr. Small's opinions. (Tr. 89-90).

In support of remand, Plaintiff first argues that the ALJ's RFC assessment was not supported by substantial evidence. Plaintiff contends that the ALJ's decision did not explain how he reached the limits included in his RFC assessment. The ALJ indicated he found the state

agency consultative physicians' opinions persuasive, which limited Plaintiff to light work. (Tr. 421). However, those doctors only opined that Plaintiff could lift/carry 20 pounds occasionally and ten pounds frequently, sit six hours, and stand/walk six hours in an eight-hour workday, never climb ladders, ropes, or scaffolds, and only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 77-78, 89-90). The ALJ indicated he adopted those opinions, but he further limited Plaintiff due to the updated records received at the hearing level. (Tr. 421). Plaintiff asserts that the ALJ did not point to any specific evidence to explain how he reached those additional limits. When assessing a claimants' RFC, the ALJ is required to indicate what evidence he relied on and explain how that led to his conclusions. SSR 96-8p57 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) ...."); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (RFC assessment cannot stand where ALJ failed to identify medical evidence to substantiate his conclusion).

Plaintiff notes that the ALJ pointed to no evidence which supported his conclusion that Plaintiff could perform light work, with the option to stand ten minutes, while remaining at the work station, after sitting one hour, and walking no more than 15 minutes at one time. Plaintiff testified she could sit only 10-to-15 minutes, not that she could sit for up to one hour. (Tr. 460.) The state agency doctors opined Plaintiff could sit six hours and stand/walk six hours, without any need for changing positions. Thus, Plaintiff concludes that the ALJ's RFC assessment is erroneous.

In response, the Commissioner argues the ALJ's RFC assessment was supported by substantial evidence because the ALJ relied on the state agency consultants' opinions, gave

Plaintiff the benefit of the doubt and assessed additional limits, and there was no doctor opinion in the record which offered greater limits than the ALJ ultimately assessed and included in the RFC assessment. However, as it is agreed that the ALJ found additional limits beyond those the state agency doctors found it is illogical to argue the ALJ relied on the state agency consultants' opinions to reach conclusions, such as a sit/stand option and off-task time, where those doctors did not opine those limits. Further, the Commissioner may not argue that the ALJ relied on the state agency consultants' opinions, when the ALJ's decision did not indicate that. *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) (collecting cases concerning *Chenery* violations indicating Defendant may not advance reasons to support the ALJ's decision which the ALJ did not advance themselves).

The Commissioner's argument that the ALJ's additional limits stemmed from his giving Plaintiff the "benefit of the doubt" is also not supported by the record.  As Plaintiff notes, Plaintiff did not testify that she could sit for an hour if she could then stand 10 minutes. Plaintiff testified that she could sit only 10-to-15 minutes. (Tr. 460). The ALJ cannot both credit Plaintiff's statements and give them the full benefit of the doubt, but at the same time find her statements not consistent with the record and not credit them. Those two statements are inconsistent. *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010) (ALJ erred failing to reconcile inconsistent findings).

The Commissioner argues that since the ALJ assessed greater limits than any doctor offered, the ALJ's RFC assessment is supported by substantial evidence. However, Defendant's argument assumes any errors the ALJ made in assessing limits beyond those the state agency doctors opined, such as off-task time and frequency and duration of the sit/stand option, necessarily account for Plaintiff's limits, or, at a minimum, benefitted Plaintiff. However, if other

12

evidence in the record demonstrated more than ten percent off task, or that Plaintiff required a sit/stand option that was more restrictive, such as that Plaintiff could not sit for a full hour before she needed to stand, then the limits the ALJ assessed did not benefit Plaintiff. That is particularly true because the vocational expert testified that if a worker were off-task more than ten percent of the workday, that would be work preclusive. Without explaining what evidence supported the additional limits the ALJ assessed, it is not evident that the ALJ's limits were restrictive enough to address all of Plaintiff's symptoms and limitations. The ALJ found limits beyond what the state agency doctors opined, but not as limited as Plaintiff reported. Since the ALJ thought there was evidence suggesting greater limits than the state agency doctors found, he was required to point to that evidence, and explain how it led to the ALJ's conclusion that Plaintiff was limited as the ALJ found, but no further (as Plaintiff alleged). Thus remand is warranted on this issue.

Plaintiff next contends that a limit that she can sit for one hour, followed by standing at the workstation for ten minutes, and walking no more than 15 minutes at a time, takes work out of the realm of light work and puts it in into sedentary work with a stand option. *See* 20 C.F.R. § 404.1567(b).  Plaintiff argues that if she was not able to perform the standing and/or walking contemplated of light work, then she was not actually capable of light work, despite the ALJ finding so. Plaintiff asserts that the ALJ's RFC more closely resembles a sedentary work limit, with a stand option, although lifting and carrying more weight. *See* 20 C.F.R. § 404.1567(a). Plaintiff points out that the Administration has recognized that a need to alternate between periods of sitting and standing renders that person incapable of either the prolonged sitting contemplated of sedentary work, or the prolonged standing contemplated of most light work. SSR 83-12. The Seventh Circuit has recognized the same. *Peterson v. Chater*, 96 F.3d 1015, 1016 (7th

13

Cir. 1996) (relying on SSR 83-12 to find that a sit/stand option takes the case out of the realm of both sedentary and light work).

Here, the ALJ asked the vocational expert if a worker could perform any of Plaintiff's past work if she could sit six hours, with the option to stand for ten minutes after each hour sitting, and, if they could walk six hours, but not more than 15 minutes at a time. (Tr. 472). Plaintiff argues that the ALJ's hypothetical question inconsistently asked the vocational expert whether a worker could do Plaintiff's past work if capable of both sedentary and light work, but also limited in the capacity to sit, stand, and walk, such that she needs a sit/stand option. The vocational expert testified that such a person could still perform Plaintiff's past work as a truck dispatcher, as Plaintiff performed it, but not as that job is generally performed. (Tr. 472-73). However, the vocational expert previously indicated that the Dictionary of Occupational Titles (DOT) described the truck dispatcher job as sedentary (and Plaintiff performed it at the light level). (Tr. 470). In finding that Plaintiff could perform the truck dispatcher job, as she performed it (light level), but not as the DOT describes it (sedentary), the vocational expert relied on Plaintiff's report that she did the job both sitting and standing/walking, split about three and one-half hours sitting and three and one-half hours standing and/or walking. (Tr. 473). Therefore, if the ALJ had found Plaintiff not capable of either prolonged standing and/or walking, or prolonged sitting, adopting Plaintiff's testimony that she could sit only about 10-to-15 minutes before having to change positions, and stand only 10-to-15 minutes before having to change positions, and given the ALJ found Plaintiff could walk only about 15 minutes at one time, the vocational expert would have found Plaintiff not capable of performing the truck dispatcher job. If Plaintiff could not engage in at least three and one-half hours of siting throughout the workday, and could not engage in standing/walking

14

for three and one-half hours in the workday, then Plaintiff could not perform that job as she performed it either. The Commissioner has not responded to this argument. This Court agrees with Plaintiff that the ALJ's errors in evaluating whether Plaintiff could perform sedentary or light work, and in assessing a sit/stand option without any basis in the record, warrants remand.

Plaintiff also argues that the ALJ failed to explain how the evidence led to his conclusion that Plaintiff would be off-task ten percent of the workday. The ALJ indicated he considered Plaintiff's reports to reach that conclusion. (Tr. 420). However, Plaintiff did not indicate she would be off-task ten percent of the workday but no more. The ALJ also found Plaintiff would be off-task ten percent of the workday due to pain. (Tr. 416). However, the reason Plaintiff would be off-task does not explain how the ALJ concluded how frequently or how long Plaintiff would be off-task. Plaintiff testified her medications made her confused at times. (Tr. 465). She also testified medications made her tired. (Tr. 455, 465). At the previous hearing, she testified her medications made her forgetful. (Tr. 50). At both hearings, she testified she could concentrate for only about 10-to-20 minutes at a time. (Tr. 47, 462). She reported problems with concentration and attention in her function report. (Tr. 195). She did not finish what she started. (*Id*.)

Plaintiff argues that the ALJ was required to consider side effects of her medications and whether that would affect her ability to stay on-task, and how often. SSR 96–8p. The ALJ pointed to no evidence indicating Plaintiff would be off-task ten percent of the workday. The only reference to ten percent off-task time was the vocational expert's testimony that a worker would only be permitted to be off-task for ten percent of the workday. (Tr. 471). However, the ALJ is not permitted to adapt his RFC finding to fit the vocational expert's testimony about what jobs would allow. That is impermissible backward reasoning. The ALJ was supposed to consider the

entire record and determine how often Plaintiff would be off-task, due to her impairments, and ask the vocational expert about the effect of that level of being off-task. *Washington v. Colvin*, 2013 WL 1903247, *11 (N.D. Ill., 2013) (remanding where there was no basis for ALJ finding that claimant would be off-task ten percent of the time and because the limit appears to have come from adopting the vocational expert's testimony that ten percent off-task time was the maximum permitted)*; Hamilton v. Colvin*, 525 Fed. Appx. 433, 439 (7th Cir. 2013) (finding the ALJ's conclusion that claimant could sit for 45 minutes was not properly determined because it came from the vocational expert's testimony that 45 minutes sitting at one time was required to perform sedentary work).

On cross-examination, Plaintiff's attorney asked if attention was the primary requirement of a truck dispatcher, to which the vocational expert indicated it was. (Tr. 474). The attorney asked the effect of missing three dispatches during off-task times, even if she was off-task less than ten percent of the time. The vocational expert testified that if that was consistently happening, the worker could not perform that job. (Tr. 474-75). Therefore, the vocational expert conceded that a truck dispatcher could not randomly be off-task ten percent of the workday, but only during certain portions of the workday, where they were not being dispatched and having to respond. As such, if Plaintiff were off-task even less than ten percent of the workday, at inopportune times, that could be work-preclusive. However, the ALJ did not mention that testimony. The ALJ was required to discuss that testimony and explain why he concluded Plaintiff could perform her past work as a truck dispatcher, despite being off-task ten percent of the workday. The Commissioner has not responded to this argument.  Due to the ALJ's errors, as discussed above, remand is required.

Next, Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's subjective symptoms. The ALJ found Plaintiff's statements about her symptoms and limitations "not entirely consistent" with the other evidence in the record. (Tr. 417). He found Plaintiff's physical examinations had been unremarkable except for tenderness and limited range of motion in Plaintiff's lumbar spine, and that the longitudinal record indicated full strength, full range of motion, intact sensation, and full grip strength and dexterity. (Tr. 420).

Plaintiff contends that the ALJ's finding was inconsistent as he noted Plaintiff had decreased lumbar range of motion, but he also noted that Plaintiff had full range of motion. Plaintiff also contends that the ALJ's conclusions were contrary to the evidence. During the relevant period, as discussed above, examinations demonstrated: tenderness to palpation of her lumbosacral spine and paraspinal muscles; limited lumbar range of motion; reduced reflexes in her right knee and both ankles; positive straight leg raise tests bilaterally; positive Patrick's sign on the right; antalgic gait and inability to walk heel to toe and tandemly; inability to stoop or squat; difficulty standing, from a seated position; and diminished grip strength as measured by dynamometer testing.

On January 18, 2016, an MRI of Plaintiff's lumbar spine demonstrated: post-operative changes following interspinous and interbody fusion at L2-3; advanced degenerative disc disease at L3-4 with facet arthrosis; severe right subarticular recess and foramen stenosis; likely positional impingement of the exiting right L3 nerve root; significant left lateral recess and subarticular recess stenosis at L1-2; and significant bilateral subarticular recess and foraminal stenosis at L4-5.

In the months immediately following her date last insured (March 31, 2017), examinations

demonstrated an antalgic gait; tenderness in her lumbar and lumbosacral spine and lower facet joints; reduced range of motion in her lumbar spine; pain with hyperextension and right and left rotation; hypersensitivity to light touch of her lumbar and lumbosacral spine; decreased sensation in her feet; reduced deep tendon reflexes in her lower extremities; positive straight leg raise tests bilaterally; painful sacroiliac joints with straight leg raise tests ; positive Patrick's tests bilaterally; positive Fortin finger tests; positive Stork's sign on the right; positive sacroiliac joint distraction test; decreased strength with left knee extension; and muscle atrophy in her p/s muscles. An EMG demonstrated bilateral L5 radiculopathy.

Thus, Plaintiff asserts that the ALJ's conclusion that she had full range of motion, full strength, and intact sensation mischaracterized the record, as Plaintiff demonstrated abnormalities in all of those areas. *Moore*, 743 F.3d at 1123 ("We have repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it."); *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014).

Plaintiff further argues that the ALJ's conclusion violated the law of the case doctrine. The law of the case doctrine mandates a trial court conform its proceedings, on remand, to the principles set forth in the appellate opinion unless there is a compelling reason to depart. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). The doctrine applies to judicial review of administrative decisions. *Id*.; *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991). In its 2020 Order, this Court held that the previous ALJ's conclusion that there was not objective evidence to support Plaintiff's alleged symptoms and limits was incorrect, as there was "multiple instances where the record shows abnormal findings and/or the limiting effects of [Plaintiff's] pain." (Tr.

18

524)[2]. Thus, Plaintiff concludes that the ALJ's finding that the physical objective evidence was not sufficient to support Plaintiff's reports was inconsistent with the findings of this Court in Plaintiff's previous case, violating the law of the case doctrine.

The Commissioner argues that when this Court remanded the case, the decision was vacated by the Appeals Council, and that prior case no longer exists. The Commissioner appears to argue that since procedurally this is a new case (with a new case number), the law of the case doctrine does not apply. However, the Commissioner cites no authority for that proposition. Further, the Seventh Circuit has indicated that the law of the case doctrine applies to judicial review of administrative decisions. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998).

The Commissioner also argues that, to the extent Plaintiff wants the Court to apply past analysis to the current ALJ decision, the Court's prior analysis did not consider whether the ALJ's credibility finding was patently wrong and whether it was supported by substantial evidence. However, the issue is not whether the Court previously found the ALJ's entire analysis of Plaintiff's statements patently wrong but, rather, whether the Court previously found the ALJ's analysis of the objective evidence insufficient and did not support the ALJ's conclusion, and whether the ALJ, on remand, made the same errors.

It is clear that the ALJ ignored this Court's previous ruling on this point, which was the basis for remanding the case in 2020.  When this Court remands a case back to the Administration, it expects its Order remanding the case to be taken seriously and complied with. Thus, the Court will, once again, remand this case with explicit instructions that the ALJ must consider the evidence in the record that supports Plaintiff's subjective symptoms. The ALJ's

---

[2] 2:18cv464-JVB-SLC, Docket Entry 20 (Feb. 19, 2020).

decision with respect to Plaintiff's subjective symptoms is erroneous and mischaracterizes the evidence. As the decision is not supported by substantial evidence, remand is required.

In a related issue, the ALJ found that a note from March 2020 indicated Plaintiff's pain in her lower extremities had completely resolved with the use of medication and steroid injections, which, the ALJ concluded, indicated Plaintiff's symptoms could be managed through conservative treatment. (Tr. 420, citing 5F/40, which is Tr 374.). The note the ALJ cited was from March 22, 2017, not March 2020, which was just prior to Plaintiff's date last insured. The note indicated Plaintiff's right leg pain had completely subsided following an injection earlier that month, on March 8, 2017, but her lower back and groin pain remained. Examination showed midline tenderness in Plaintiff's lumbosacral spine at L5-S1, reduced lumbar spine range of motion, positive straight leg raise test on the right, reduced deep tendon reflexes bilaterally, and positive Patrick's sign on the right. (Tr. 374).

The Seventh Circuit has recognized that improvement does not inherently undermine a claimant's reported ongoing symptoms or limits because improvement does not indicate a specific level of functioning or address any ongoing symptoms or limitations, despite improvement. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("They key is not whether one has improved…, but whether [she] has improved enough to meet the legal criteria of not being classified as disabled."); *Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016) (responding to treatment does not mean able to work). The ALJ did not explain how improvement in leg pain from the injection undermined Plaintiff's reported ongoing symptoms and limitations. *Moore*, 743 F.3d at 1121. (ALJ must build logical bridge).

Additionally, although the ALJ confined his discussion to the evidence prior to Plaintiff's

20

date last insured, evidence after March 2017 was relevant as it demonstrates that the injection in

March 2017, which completely resolved Plaintiff's right leg pain, was temporary. Thereafter, she

continued to report pain into her right leg and only partial relief from pain. The post-date last

insured evidence also undermined the ALJ's conclusion that Plaintiff's treatment was

conservative, as she continued to receive treatment, including significant opioid pain medication,

and, ultimately underwent a trial spinal cord stimulator, followed by implantation of a permanent

spinal cord stimulator. (Tr. 671-72). Implantation of a permanent spinal cord stimulator is an

invasive surgical procedure. The ALJ should have considered evidence post-dating Plaintiff's

date last insured, especially since it undermined his conclusions. *Halvorsen v. Heckler*, 743 F.2d

1221, 1225-26 (7th Cir. 1984).

The Commissioner argues that any evidence of improvement or worsening of Plaintiff's

condition, after the relevant time period, did not speak directly to Plaintiff's condition during the

relevant period. Therefore, the Commissioner argues, post-date last insured evidence does not

outweigh the evidence from the relevant period of time, on which the ALJ relied. However, as

Plaintiff notes, the Seventh Circuit has indicated that the ALJ should consider post-date last

insured evidence if it could shed light on the pre-date last insured evidence. *Halvorsen v.

Heckler*, 743 F.2d 1221, 1225-26 (7th Cir. 1984). This Court has previously held that evidence

outside the relevant time period under review should be considered. *Lightner v. Berryhill*, No.

3:17-CV-206 JD, 2018 WL 1150727, *4-5 (N.D. Ind. Mar. 5, 2018); *Keiper v. Berryhill*, 383

F.Supp.3d 819, 825 (N.D. Ind. Apr. 17, 2019). Here, the post-date last insured evidence directly

speaks to and undermines the ALJ's conclusion that Plaintiff's treatment was conservative, and

that conservative treatment was effective. The ALJ should have considered that evidence and his

failure renders his analysis of Plaintiff's symptoms legally insufficient and his decision to discount Plaintiff's statements not supported by substantial evidence. Thus, remand is warranted on this issue.

Another issue in this case is the ALJ's reliance on the fact that Plaintiff was discharged from her pain specialist after failing two drug screenings and admitting to overusing her medication. The ALJ found that this evidence suggested Plaintiff displayed drug-seeking behavior and that Plaintiff's symptoms were not as severe as she alleged. (Tr. 420, citing 6F/2 which is Tr. 390). The note the ALJ relied upon indicates Plaintiff reported she overused Nucynta. (Tr. 390). Plaintiff argues that overusing a pain medication suggested that she was in pain, not that she was pain-free. Consistent with that, elsewhere in the record, Plaintiff indicated that Nucynta was not providing adequate relief from her pain. In October and November 2017, she ran out of Nucynta early because she did not think the medication was managing her pain for a full 12 hours and she took more. (Tr. 744, 801, 921). Plaintiff was noted to <u>not</u> exhibit drug-seeking behavior. (Tr. 801). Her provider discussed changing her medication to MS Contin instead, to which Plaintiff agreed. (Tr. 921). No doctor indicated Plaintiff was "drug seeking" at any point in the record. Notably, after Plaintiff's date last insured, notes consistently indicate no drug seeking behavior was observed. (Tr. 344, 771, 789, 795, 807, 829, 835, 856, 861, 866, 870, 875, 880, 889, 905, 913, 921).

In any event, even if Plaintiff was engaging in "drug seeking" behavior, such would not inherently undermine her reported pain and limitations. The Seventh Circuit has indicated "drug seeking" and disabling pain are not mutually exclusive and not inconsistent. *Moore,* 743 F.3d at 1125 ("[F]inding that at least some of those emergency room visits may be related to drug-

seeking behavior does not support a finding that her migraines impose no limitations whatsoever … a drug addiction problem is not inconsistent with the presence of chronic migraines—the conditions are not mutually exclusive."). Here, the ALJ pointed to no evidence to support the conclusion that Plaintiff was seeking unnecessary medication and thus it was unreasonable for the ALJ to discount Plaintiff's credibility based upon such evidence.

The Commissioner argues that there was evidence Plaintiff was drug-seeking rather than seeking pain alleviation, and that it was valid for the ALJ to consider that when evaluating Plaintiff's statements.  However, the Commissioner fails to address Plaintiff's argument that no doctor indicated Plaintiff was "drug seeking" and that treatment notes specifically indicate that Plaintiff was <u>not</u> "drug seeking." The Commissioner also has not addressed Plaintiff's argument that overuse of pain medications suggests Plaintiff was in pain, rather than undermining Plaintiff's reported pain. The Commissioner also failed to address Plaintiff's argument that even if Plaintiff was "drug seeking", that does not inherently undermine her reported pain because one can both be "drug seeking" and in pain. *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014). Due to the ALJ's errors, remand is warranted on this issue.

Plaintiff next argues that when a claimant alleges pain as a significant cause of limitations, the ALJ is required to evaluate those statements in light of various regulatory factors to determine the weight to give those statements. 20 C.F.R. § 404.1529 and SSR 16-3p; *Zurawski*, 245 F.3d at 887-88*; see also, Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).  Here, however, the ALJ did not discuss multiple relevant factors. As noted above, the ALJ did not consider Plaintiff's reported side effects of medication. SSR 16-3p. Also, as discussed above, the ALJ did not consider that Plaintiff took numerous pain medications, including opioid pain medications, which

23

supports Plaintiff's contention that she suffered from severe pain and was attempting to get relief, and which indicates that Plaintiff's providers believed Plaintiff and were willing to prescribe those medications. The ALJ did not consider other modalities Plaintiff used to relieve her symptoms, including that she spent periods of time lying down during the day, to relieve her symptoms. (Tr. 460). Plaintiff's need to lie down could have had a significant impact on her ability to sustain employment. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("no employer is likely to hire a person who must lie down 2-3 times a day for an hour at a time…") The ALJ also did not consider that Plaintiff underwent back surgery and physical therapy (prior to even applying for disability benefits). She also tried different medications, injections, a back brace, changing her daily activities, and ultimately implantation of a permanent spinal cord stimulator. Plaintiff asserts that these various attempts to obtain relief supports her allegations that her symptoms were distressing. *Carradine*, 360 F.3d at 755 (improbable claimant would have undergone amount and type of treatment she did to strengthen the credibility of her reported pain); *see also*, SSR 16-3p (persistent attempts at relief may indicate symptoms are distressful, intense, and persistent).

Plaintiff reported limited activities due to her symptoms. She testified she could empty the dishwasher but had to take breaks. (Tr. 47). She could make her bed, but needed to take breaks and could not change the sheets. (*Id.*) Her husband did other chores, such as vacuuming, sweeping, and mopping. (Tr. 47-48). She could grocery shop if she had a short list but if she needed a longer list of items, her husband shopped alone. (Tr. 48). She had a support bar in the shower and usually waited to shower until her husband was home. (Tr. 58). She did not do any yard work. (Tr. 59). She had trouble driving or riding in a car for longer than 15-to-20 minutes,

due to pain. If she had to go on a longer ride, she would crawl into the back seat with pillows and stop at numerous rest areas. (Tr. 45). The ALJ did not consider that Plaintiff's daily activities were significantly restricted due to her pain and other symptoms. *Zurawski*, 245 F.3d at 887-88. (ALJ should have considered that claimant's activities were fairly restricted and would not necessarily undermine or contradict claims).The Commissioner has failed to respond to these arguments. The ALJ's failure to adequately evaluate the required regulatory factors renders his analysis of Plaintiff's subjective symptoms legally insufficient, and his decision to discount Plaintiff's statements not supported by substantial evidence and warrants remand.

Next, Plaintiff argues that the ALJ's conclusion that she could perform her past work as a truck dispatcher was not supported by substantial evidence. The ALJ found Plaintiff could perform her past work as a truck dispatcher, as Plaintiff had performed that job, but not as it was generally performed. (Tr. 422.) Before reaching that conclusion, the ALJ must make specific findings of fact, which includes findings of fact as to the demands of the past work, despite her limitations. SSR 82-62. Those findings must be included in the decision. SSR 82-62 (The "decision as to whether the claimant retains the functional capacity to perform past work… must be developed and explained fully in the disability decision."); *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991); *Prince v. Sullivan*, 933 F.2d 598, 602-03 (7th Cir. 1991). The ALJ assessed Plaintiff's RFC (Tr. 416), found past relevant work as a truck dispatcher (Tr. 422), then found that in comparing the demands of the truck dispatcher job to Plaintiff's RFC, that work did not require any activities precluded by the RFC assessment. (*Id*.). However, the ALJ failed to include any findings of fact regarding the demands of that job. As such, the ALJ did not meet the requirements of SSR 82-62 by comparing the job demands, as Plaintiff performed the job, to the

25

RFC, and did not support his conclusion that Plaintiff could perform that past work.

The ALJ's error was significant because comparison of the job duties Plaintiff reported as a truck dispatcher with the RFC suggests Plaintiff could not perform that job, as she had in the past. Plaintiff reported she answered phones, talked to drivers on the radio, coordinated missed tickets, entered information into the computer, and carried things to the basement. (Tr. 43-44). She testified the job was more customer service-type work. (Tr. 51). She primarily sat. (Tr. 43). She lifted and/or carried 30 to 40 pounds. (Tr. 52). She had to lift/carry items weighing 30 to 40 pounds, which was inconsistent with the ALJ's limit that Plaintiff could only lift/carry 20 pounds occasionally and up to 10 pounds frequently. As explained above, Plaintiff had to be available to answer phones, talk to drivers on the radio, coordinate missed tickets, and perform other customer service work. There was no indication she could have performed those tasks, sufficiently and consistently enough, if she was off-task ten percent of the time. Those inconsistencies undermined the vocational expert's testimony that Plaintiff could perform her past work as a truck dispatcher, as Plaintiff had performed it. The ALJ's decision was not supported by substantial evidence because it was based on unreliable vocational expert testimony. *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008) (conclusion based on unreliable VE testimony is not supported by substantial evidence and must be vacated). Thus, remand is required.

26

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.


Entered: March 28, 2022.


s/ William C.  Lee
William C. Lee, Judge
United States District Court